# UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| H.N. BY AND THROUGH FABIEN N.,<br><br>    Plaintiff,<br><br>    V.<br><br>ANTHEM BLUE CROSS AND BLUE SHIELD, MARSH & MCLENNAN COMPANIES, INC. and ANTHEM BLUECROSS BLUESHIELD MEDICAL PLAN OPTIONS MARSH MCLENNAN PLAN,<br><br>    Defendants. | CIVIL ACTION NO. |

## COMPLAINT

### INTRODUCTION

1. Plaintiff H.N. ("Plaintiff" or "H.N.") by and through Fabien N. brings this action against Anthem Blue Cross and Blue Shield ("Anthem"), Marsh & McLennan Companies, Inc. ("Marsh"), and Anthem BlueCross BlueShield Medical Plan Options Marsh McLennan Plan ("Plan"), (collectively, "Defendants"), for violation of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 *et seq.* ("ERISA") and the Mental Health Parity and Addiction Equity Act ("MHPAEA"). H.N. is a beneficiary of the Plan, an ERISA welfare benefit plan, whose claims administration is handled by Anthem under an administrative services agreement ("ASA") with Marsh. Marsh self-funds the Plan.

2. Through this litigation, H.N. is seeking coverage from Defendants for mental health

treatment, specifically, residential treatment, required to treat her life-threatening condition. Defendants terminated coverage for H.N.'s treatment without adhering to H.N.'s procedural rights in violation of ERISA and MHPAEA. The benefits at issue are payable by Marsh pursuant to the Plan's funding mechanism. Full relief cannot be granted to H.N. without Marsh's involvement in this matter.

3. On information and belief, Marsh played no role in the decision to terminate H.N.'s benefits.

4. Plaintiff challenges Defendants': 1) failure to provide H.N. with a full and fair review of her claim; 2) unreasonable and unlawful denial of H.N.'s claim for residential mental health treatment benefits despite substantial clinical evidence demonstrating H.N.'s entitlement to said benefits; 3) pattern of rejecting and ignoring the substantial evidence supporting H.N.'s entitlement to coverage; 4) failure to provide a reasonable claims procedure that would yield a decision on the merits of H.N.'s claim, including violating ERISA's implementing regulations governing the review of appeals; and 5) provision of lesser coverage and more onerous requirements to access mental health residential treatment as compared to analogous in-network inpatient medical or surgical treatment.

## JURISDICTION

5. This Court has personal and subject matter jurisdiction over this case under 29 U.S.C. § 1132(e) and (f), without regard to jurisdictional amount or diversity of citizenship, in that the Plan is administered in this district.

## PARTIES

6. At all relevant times, Plaintiff H.N. was a resident of Middlesex County, Massachusetts. At the time of her treatment, which is the subject of this Complaint, H.N. was a covered

minor dependent under the Plan, residing in Massachusetts.

7. At all relevant times, Plaintiff Fabien N. was a resident of Middlesex County, Massachusetts. Fabien N. is H.N.'s father and a participant in the Plan.

8. The defendant Anthem is a for-profit corporation with its principal place of business in Woodland Hills, California. Anthem conducts business in Massachusetts and administers the Plan at issue.

9. Defendant Marsh is a for-profit corporation with its principal place of business in New York, New York. Marsh conducts business in Massachusetts, and self-funds the benefits payable under the Plan.

10. Defendant Anthem BlueCross BlueShield Medical Plan Options Marsh McLennan Plan is an "employee welfare benefits plan" as defined by ERISA, 29 U.S.C. §1002(1). The Plan was issued by Anthem and provides coverage to Massachusetts residents.

11. At all times relevant to the claims asserted in this Complaint, Defendants purported to act as ERISA claim fiduciaries with respect to participants of the Plan, generally, and specifically, with respect to H.N., within the meaning of ERISA.

<strong>FACTS</strong>

**The Plan**

12. As a Plan beneficiary (through her father, a Plan participant), H.N. is entitled to health insurance coverage under the Plan.

13. The Plan is insured by Marsh.

14. The Plan covers "medically necessary inpatient and outpatient mental health treatment services, including residential treatment."

15. The Plan defines "Residential Treatment Facility" as "An Inpatient Facility that treats

mental health and substance abuse conditions" and is licensed and accredited.

16. The Plan defines "Medically Necessary" as follows:

Healthcare services provided for the purpose of preventing, evaluating, diagnosing or treating a sickness, injury, mental illness, substance use disorder, condition, disease or its symptoms, that are all of the as determined by the Claims Administrator or its designee, within the Claims Administrator's sole discretion. The services must be:

- in accordance with Generally Accepted Standards of Medical Practice;
- clinically appropriate, in terms of type, frequency, extent, site and duration, and considered effective for your sickness, injury, mental illness, substance use disorder disease or its symptoms;
- not mainly for your convenience or that of your doctor or other health care provider; and
- not more costly than an alternative drug, service(s) or supply that is at least as likely to produce equivalent therapeutic or diagnostic results as the diagnosis or treatment of your Sickness, Injury, disease or symptoms; and
- rendered in the least intensive setting that is appropriate for the delivery of the services, supplies or medications. Where applicable, the Medical Director or Review Organization may compare the cost-effectiveness of alternative services, supplies, medications or settings when determining least intensive setting.

17. H.N.'s requested treatment meets the Plan definition of "medical necessity."

18. H.N.'s claim for subacute residential mental health treatment was not subject to any of the Plan's exclusions for coverage.

19. H.N.'s claim for subacute residential mental health treatment is not subject to any exclusions under the Plan.

20. There are no contractual bars to H.N.'s claim for mental health treatment.

21. Defendants terminated H.N.'s coverage of her treatment asserting it is not a covered service under the Plan.

**H.N.'s treatment at Ascend and claim for residential mental health treatment**

22. From January 27, 2025 until July 7, 2025, H.N. required subacute mental health residential treatment at Ascend Healthcare's facility in Santa Clarita, California

("Ascend"), which is the subject of this lawsuit, as provided under the terms of the Plan.

23. Ascend is an in-network residential treatment provider under the Plan.

24. Anthem authorized coverage of H.N.'s claim from January 27, 2025 through March 24, 2025, conducting regular concurrent reviews of her claim in order to confirm the medical necessity of her ongoing treatment.

25. Marsh and the Plan paid the cost of H.N.'s inpatient treatment at Ascend until March 24, 2025.

## Anthem's termination of H.N.'s benefits

26. On March 24, 2025, Ascend requested ongoing coverage for H.N. based on their clinical determination that H.N.'s condition required continued residential treatment.

27. On March 25, 2025, Anthem informed Ascend that the case was escalated to peer review.

28. On March 27, 2025, the peer review took place between Ascend Clinical Director Kristina Navarro, LCSW and Anthem.

29. That same day, March 27, 2025, Anthem denied H.N.'s request for ongoing treatment at Ascend as not medically necessary, effective March 25, 2025 through her discharge date.

30. Anthem's March 27, 2025 termination letter stated, in relevant part:

The information we have does not show you are a danger to yourself or others, or that you were having serious problems functioning. Care can be given outside [residential treatment facility]. Based on the guideline and what we know, the request is denied. The request is not medically necessary. There may be other treatment options to help you, such as outpatient services.

31. The March 27, 2025 termination letter did not specify what "information" Anthem relied on in determining that H.N.'s inpatient treatment at Ascend was no longer medically necessary.

32. Anthem's records indicate that it terminated coverage of H.N.'s ongoing treatment based

upon the recommendation of its physician reviewer, Janelle Arias, MD. Dr. Arias does not appear to have reviewed any updated medical records regarding H.N.'s condition or treatment.

**H.N.'s initial appeal of Anthem's termination of her benefits**

33. On March 28, 2025, on H.N.'s behalf, Ms. Navarro at Ascend requested an expedited appeal of Anthem's termination of H.N.'s benefits.

34. Also on March 28, 2025, Fabien N., H.N.'s father, submitted his own request for "a full review of her case, including in-person assessment and review if needed and possible."

35. On the same day, March 28, 2025, Anthem denied H.N.'s appeal, stating simply that:

> After the treatment you had, you were no longer at risk for serious harm that needed 24-hour care. You could have been treated with outpatient services. We based this decision on MCG guideline Residential Behavioral Health Level of Care, Child or Adolescent (ORG: B-902-RES).

36. Anthem informed Ascend that it could file a second level of appeal.

37. Anthem's decision was based upon the opinion of its physician reviewer, Abe Soliman, MD. As with Dr. Arias, it does not appear that Dr. Soliman reviewed any updated medical records regarding H.N.'s condition or treatment.

**H.N.'s second level appeal of Anthem's termination of her benefits**

38. On April 1, 2025, on H.N.'s behalf, Ascend requested that Anthem participate in a live telephonic review for H.N.'s second level appeal.

39. On April 3, 2025, Ascend faxed additional clinical information to Anthem, which noted that H.N. was continuing to experience "emotional dysregulation, difficulty with social interactions, heightened sensory sensitivity, an increased need for routine and predictability, and an intensified stress response in unfamiliar or unpredictable situations" as well as " heightened anxiety symptoms in all clinical settings, more frequent in the last

week, where she will verbally engage but at a minimal level of volume" and that "client continues to experience persistent urges to self-harm and ongoing suicidal ideation."

40. Despite Ascend's requests for a live review, on April 4, 2025 Anthem's appeals department advised Ascend that the appeal could not be completed via live review, and that a physician was reviewing the clinical information that was faxed.

41. On April 4, 2025, PREST physician reviewer Randy Ross, MD reviewed H.N.'s second level appeal. Contrary to the opinions of H.N.'s treatment team, and in opposition to H.N.'s clinical presentation, Dr. Ross concluded that H.N.'s continued residential treatment was not medically necessary, and that "there was a significant reduction in her level of self-harm. There was an absence of any suicidal ideation. The patient was demonstrating improved behavioral control. She was taking medication as prescribed. She was physically stable. Her family was involved and supportive. It appears that the patient had achieved sufficient stability to pursue her treatment goals at a less restrictive level of care. Treatment at a lower level of care appeared appropriate."

42. On April 5, 2025, H.N.'s second level appeal was reviewed by Anthem reviewer Dr. Timothy Veal, a non-practicing psychiatrist who specializes in education and organization consulting. His focus is on "Group Seminars & Workshops," "Corporate Mental Health Program," and "Professional Consultation." Dr. Veal reviewed Dr. Ross's report and stated simply "I have reviewed the ACMP notes, the initial review, available clinical information, as well as assessment and recommendations provided by the external physician reviewer. I agree with the external psychiatrist review determination and recommendations."

43. Neither Dr. Veal nor Dr. Ross engaged with H.N.'s medical records or the

recommendations of her treatment team outlining her ongoing active suicidal ideation, self-harm, and threat of harm should she be discharged. To conclude that she could safely be treated at a lower level of care, particularly during a time period in which she was actively suicidal and placed on 1:1 monitoring for her safety, is without merit.

44. Dr. Ross's conclusion that "there was an absence of any suicidal ideation" during this time, and Dr. Veal's apparent rubber stamping of that conclusion, is particularly egregious and demonstrates a blatant disregard of H.N.'s medical records.

45. On April 5, 2025, based on the reviews of Dr. Ross and Dr. Veal, Anthem denied H.N.'s second level appeal.

46. None of Anthem's physician reviewers examined H.N. or spoke with H.N. or her parents to obtain a history or otherwise, and none of them engaged with her medical records in any meaningful way.

47. In its April 5, 2025 denial letter, Anthem cited one guideline from the MCG Behavioral Criteria Guidelines for Residential Behavioral Health Level of Care, specifically MCG ORG: B-902-RES-Residential Behavioral Health Level of Care, Child or Adolescent ("MCG Guidelines"), to support its determination that ongoing residential treatment was not medically necessary.

48. Instead of applying the available clinical information to the MCG Guidelines, Anthem's April 5, 2025 denial letter simply concluded "After the treatment you had, you were no longer at risk for serious harm that needed 24-hour care. You could have been treated with outpatient services."

49. H.N.'s medical records reveal that Anthem's conclusions are inaccurate, not supported by the clinical information, and inconsistent with the MCG Guideline Anthem purported

to use as the basis for its denial of H.N.'s claim.

50. In its April 5, 2025 denial letter, Anthem stated that "This is our final adverse determination but you may have more options."

**H.N.'s request that Anthem overturn its termination of her benefits**

51. On December 19, 2025, counsel for H.N. requested that Anthem overturn its decision to terminate H.N.'s benefits for residential mental health treatment at Ascend.

52. H.N. requested that Anthem conduct a renewed assessment of her claim in order to resolve this matter without resorting to litigation, as contemplated by ERISA.

53. The December 19, 2025 letter included an independent medical review of H.N.'s file by Elizabeth Childs, MD, PC, a practicing psychiatrist board certified in Adult and Child and Adolescent Psychiatry and former Chief and Director of Psychiatry at Carney Hospital and former Commissioner of Mental Health at Commonwealth of Massachusetts.

54. Dr. Childs concluded that "Anthem's reviews minimize the severity and extent of [H.N.'s] complicated mental illnesses as clearly documented in the medical records and her serious impairment in functioning in all domains, including social, academic, family, medical, physical safety and emotional.

55. The December 19, 2025 letter included substantial additional clinical information demonstrating that Anthem's cursory conclusions set forth in its termination and subsequent denials, do not reflect the severity of H.N.'s condition at that time.

56. On December 22, 2025, Anthem acknowledged H.N.'s December 19, 2025 appeal, noting:

We've received a request from ROSENFELD & RAFIK for an appeal.

9

If we need more information, we may get in touch again or contact your doctor. If there is anything else you'd like us to include in our review, feel free to send it our way. You can mail it to Anthem Blue Cross and Blue Shield Grievances and Appeals, PO Box 105568, Atlanta, GA 30348-5568, or fax it to 1-877-487-7394.

If we get new information about this case from anyone other than you or a person you've chosen to help you, called your member or authorized representative, we may be required to share it with you under federal law.

Generally, we will do a review and respond to the appeal within 30 days from the date we get it if received pre (before) service or 60 calendar days from the date we get it if received post (after) service. Your health plan might give different timeframes. Please look at your plan documents or call Member Services at the number on your ID card for details.

57. On December 31, 2025, H.N. wrote Anthem requesting that Anthem provide her with the ability to review and to respond to any reviews (medical or otherwise) performed in response to her appeal submission prior to Anthem's final decision as required by ERISA.

58. Anthem did not respond to H.N.'s December 31, 2025 letter.

59. On January 14, 2026, H.N. followed up on her December 31, 2025 letter, requesting the ability to review and to respond to any reviews conducted on her appeal prior to Anthem's final decision.

60. Anthem did not respond to H.N.'s January 14, 2026 letter.

61. On January 31, 2026, H.N. again followed up on her letters of December 31, 2025, and January 14, 2026, requesting the ability to review and to respond to any reviews conducted on her appeal.

62. Anthem did not respond to H.N.'s January 31, 2026 letter.

63. Instead, on February 3, 2026, counsel for H.N. received, by first class mail, a letter dated January 21, 2026 from Anthem declining to review her December 19, 2025 appeal despite its agreement to do so on December 22, 2025.

64. Anthem did not respond to the additional information or arguments set forth in the December 19, 2025 request.

**Defendants' violation of MHPAEA and Massachusetts Parity Law.**

65. ERISA, as amended by the Mental Health Parity and Addiction Equity Act, 29 U.S.C. § 1185a, and its implementing regulations, generally requires, among other things, parity in the provision of treatment for mental and physical conditions. MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as required by both ERISA and MHPAEA.

66. An Act Relative to Mental Health Benefits, M.G.L. ch. 175, § 47B ("Massachusetts Parity Law") requires fully insured health plans to cover a full range of medically necessary inpatient, outpatient, and "intermediate" services for adults and children. Intermediate services include acute and other residential treatment. Unlike MHPAEA, the Massachusetts Parity Law mandates specific benefits and coverage. Residential treatment, regardless of what setting it occurs, is intermediate mental health treatment.

67. The Massachusetts Parity Law is not preempted by ERISA.

68. Any claim by Defendants that the Plan is not subject to Massachusetts Parity Law is negated by the Plan's adoption of the standards for treatment of mental health conditions "that are scientifically recognized and approved by the Commissioner of the Department of Mental Health."

69. Residential treatment for mental health conditions is comparable to a skilled nursing care facility or a skilled rehabilitation facility for physical conditions.

70. To access care at a rehabilitation hospital or skilled nursing facility for a physical condition, Plan insureds do not need to demonstrate that the facilities provide any level of

care, any level of assessment, any level of therapies, or any standards for the licensing or credentials for the individuals providing such care as required for acute or sub-acute residential treatment programs under the terms of the Plan as required by Massachusetts Parity Law.

71. Imposing treatment limitations on acute and sub-acute mental health residential treatment programs under the terms of the Plan that are unnecessary for mental health treatment and not imposing such unnecessary treatment limitations on skilled nursing facilities and/or rehabilitation facilities constitutes a violation of MHPAEA and the Massachusetts Parity Law.

72. Imposing treatment limitations on acute residential treatment programs under the terms of the Plan that go beyond the medical necessity requirements imposed upon skilled nursing facilities and/or rehabilitation facilities constitutes a violation of MHPAEA and the Massachusetts Parity Law.

73. Defendants' requirement that Plan participants demonstrate a higher acuity of symptoms to access residential treatment for mental health conditions than those required to access inpatient medical or surgical care constitutes a violation of MHPAEA and the Massachusetts Parity Law.

74. Defendants' application of a higher standard of proof for acute residential treatment than that required for skilled nursing care or skilled rehabilitation programs violates Federal and Massachusetts parity laws, particularly as the Plan does not offer an explanation as to why acute residential treatment programs are subject to a higher level of proof than skilled nursing facilities and/or rehabilitation hospitals.

75. Both Marsh and Anthem are responsible for ensuring that the Plan complies with Federal and state parity laws.

**Summary of H.N.'s Claim**

76. H.N. has exhausted her administrative remedies pursuant to 29 C.F.R. 2560.503-1(1).

77. H.N.'s eligibility for benefits is based on the substantial evidence in Defendants' possession.

78. Defendants failed to adequately explain why they determined that H.N.'s treatment at Ascend was medically necessary from her admittance on January 27, 2025 until March 23, 2025, but subsequently determined H.N.'s treatment from March 24, 2025 through her discharge on July 7, 2025 was not medically necessary.

79. Neither Defendants nor the medical reviewers they relied on addressed the substance of H.N.'s medical records submitted by H.N. during the appeals process, which contradicted Defendants' physician reviewers' conclusions.

80. None of the physician reviewers Defendants relied on to deny benefits examined H.N. or spoke with H.N. or her parents.

81. On information and belief, Defendants' termination of benefits was based on inaccurate and incomplete information generated regarding H.N.'s treatment needs and clinical history.

82. Any discretion to which the Defendants may claim they are entitled under the Plan is negated by their failure to provide H.N. with satisfactory explanations as to their adverse actions as proscribed by ERISA and its implementing regulations.

83. Defendants failed to meet the minimum requirements for the denial of H.N.'s benefits, in violation of ERISA, 29 U.S.C. § 1133, which requires that upon a denial of benefits, the

administrative review procedure must include adequate notice in writing setting forth the specific reasons for the denial of benefits and a reasonable opportunity for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

84. Defendants have also failed to meet the Plan requirements for review of claims that have been denied.

85. Defendants failed to provide H.N. with a full and fair review of her claim for benefits.

86. The decision to deny H.N.'s benefits was self-serving, wrongful, unreasonable, irrational, solely contrary to the evidence, contrary to the terms of the Plan, and contrary to law.

87. Due to the unlawful denials of benefits under ERISA, H.N. suffered significant financial loss.

88. Defendants failed to ensure that Plan participants have comparable mental health benefits as benefits provided for physical conditions violates MHPAEA.

89. Defendants are required to take steps to comply with and to ensure that Anthem complies with MHPAEA.

90. On information and belief, Defendants failed to ensure that Anthem was complying with MHPAEA.

91. On information and belief, Defendants impose a higher level of proof of coverage for mental health claims, and residential claims in particular, than that required for claims rooted in physical illnesses.

92. Defendants' misrepresentation of the severity of H.N.'s symptoms constitutes a failure to provide a full and fair review of H.N.'s claim and is a violation of ERISA.

93. Defendants' selective review of the evidence supporting H.N.'s claim renders its decision an abuse of discretion under ERISA.

94. Defendants' actions have been detrimental to H.N.'s health and wellbeing and have negatively impacted their family.

95. Having exhausted the administrative procedures provided by the Defendants, H.N. now brings this action.

**FIRST CAUSE OF ACTION**
**(Enforcement of Terms of Plan**
**Action for Unpaid Benefits)**
**(ALL DEFENDANTS)**

96. H.N. realleges each of the paragraphs above as if fully set forth herein.

97. The Plan is a contract.

98. H.N. performed all her obligations under the contract.

99. In particular, H.N. met all the conditions for the payment of health insurance benefits under the Plan, including but not limited to, providing Defendants proof that the requested treatment services are a covered benefit pursuant to the terms of her insurance contract. Nonetheless, Defendants have failed to provide H.N. with the health insurance benefits she is due under the terms of the Plan.

100. 29 U.S.C. § 1132(a)(1)(B) states that:

A civil action may be brought ---

(1) by a participant or beneficiary –

A.      for the relief provided for in subsection (c) of this section, or

B.      to recover benefits due to her under the terms of her plan, to enforce her rights under the terms of the plan, or to clarify her rights to future benefits under the terms of the plan.

101. Defendants' actions constitute an unlawful denial of benefits under ERISA, as provided in 29 U.S.C. § 1132(a)(1)(B).

15

102. Defendants unlawfully denied H.N.'s benefits in part by failing to provide H.N. with a full and fair review of their decision to deny coverage for her claim for residential mental health treatment.

103. In accordance with 29 U.S.C. § 1132, H.N. is entitled to coverage for the treatment she received under the Plan.

104. Defendants refused to provide H.N. with coverage for the covered treatment received and are, therefore, in breach of the terms of the Plan and ERISA, which requires that the Defendants engage in a full and fair review of all claims and the administration of the Plan in the best interests of the Plan participants.

105. As a direct and proximate result of this breach, H.N. lost the principal and the use of the funds expended to pay for the cost of H.N.'s treatment, which should have been paid by Defendants.

106. H.N. is entitled to the Massachusetts twelve percent statutory rate of interest due to the loss of the use of the funds expended to pay for H.N.'s medically necessary treatment at Ascend.

107. H.N. is entitled to immediate reimbursement for the period of time benefits were approved with twelve percent interest.

**SECOND CAUSE OF ACTION**
**(Violation of MHPAEA)**
**(Breach of Fiduciary Duty and Claim for Appropriate**
**Equitable Relief under 29 U.S.C. §1132(a)(3))**
**(ALL DEFENDANTS)**

108. H.N. realleges each of the paragraphs above as if fully set forth herein.

109. H.N. is entitled to declaratory judgment and injunctive relief.

110. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) authorizes a participant or beneficiary to bring a civil action to: "(A) enjoin any act or practice which violates any provision of this

16

title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) enforce any provisions of this title or the terms of the Plan."

111. Due to the fiduciary breaches perpetrated by Defendants, including without limitation, the violations of MHPAEA, H.N. is entitled to other equitable relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

112. MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and MHPAEA.

113. In general, MHPAEA requires ERISA plans provide no less coverage for treatment of mental health and substance use disorders than ERISA plan provide for treatment of medical or surgical disorders.

114. Specifically, MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical or surgical benefits and also make unlawful separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits. 29 U.S.C.§1185a(a)(3)(A)(ii).

115. Impermissible nonquantitative treatment limitations under MHPAEA include, but are not limited to, medical management standards limiting or excluding benefits based on medical necessity, restrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. §2590.712(c)(4)(ii)(A) and (H).

116. Defendants violated 29 C.F.R. §2590.712(c)(4)(i) because the medical necessity criteria utilized by Anthem, as written and in operation, use processes, strategies, evidentiary standards, or other factors to limit coverage for mental health or substance use disorder

treatment in a way that is inconsistent with, and more stringently applied, than the processes, strategies, evidentiary standards or other factors used to limit coverage for medical/surgical treatment in the same classification as described in greater detail above.

117. Defendants' imposition of a higher standard of proof for access to intermediate mental health care than that required for comparable physical treatment is a Non-Quantitative Treatment Limitation that violates MHPAEA.

118. The actions of Defendants in requiring conditions for coverage that do not align with medically necessary standards of care for treatment of mental health and substance use disorders violate MHPAEA because the Plan does not impose similar restrictions and coverage limitations on analogous levels of care for treatment of medical and surgical conditions.

119. In addition, Defendants' denial of ongoing treatment reveals a significant disparity concerning the documentation required for mental health services versus what is required of comparable medical or surgical services.

120. In this manner, Defendants violate 29 C.F.R. §2590.712(c)(4)(i) because the terms of the Plan and the medical necessity criteria utilized by Defendants, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied, than the processes, strategies, standards or other factors used to limit coverage for medical/surgical treatment in the same classification.

121. Defendants did not produce the documents Plaintiff requested to evaluate medical necessity and MHPAEA compliance, nor did they address in any substantive capacity the Plaintiff's allegations that Defendants were not in compliance with MHPAEA.

122. Defendants restricted the availability of Plaintiff's treatment by forcing Plaintiff to comply with requirements contained only within proprietary criteria.

123. Not only did Defendants exempt comparable medical or surgical services from these requirements, but they do not appear to have proprietary medical or surgical criteria for analogous medical/surgical care.

124. The violations of MHPAEA by Defendants gives H.N. and other Defendants' insureds who have been likewise aggrieved, the right to obtain appropriate equitable remedies as provided under 29 U.S.C. §1132(a)(3) including, but not limited to: surcharge, estoppel, restitution, disgorgement, injunction, accounting, constructive trust, equitable lien, declaratory relief, unjust enrichment, and specific performance, together with prejudgment interest pursuant allowed by law, and attorney fees and costs pursuant to 29 U.S.C. §1132(g).

125. The violations of MHPAEA by Defendants are breaches of fiduciary duty and also give the Plaintiff the right to obtain appropriate equitable remedies as provided under 29 U.S.C. §1132(a)(3) including, but not limited to:

(a) A declaration that the actions of Defendants violate MHPAEA;

(b) An injunction ordering Defendants to cease violating MHPAEA and requiring compliance with the statute;

(c) An order requiring the reformation of the terms of the Plan and the medical necessity criteria utilized by Defendants to interpret and apply the terms of the Plan to ensure compliance with MHPAEA, including but not limited to, requiring the use of the LOCUS guidelines in assessing claims for mental health treatment;

(d) An order requiring disgorgement of funds obtained by or retained by Defendants as a result of their violations of MHPAEA;

(e) An order requiring an accounting by Defendants of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan as a result of Defendants' violations of MHPAEA;

(f) An order based on the equitable remedy of surcharge requiring Defendants to provide payment to the Plaintiff as make-whole relief for her losses;

(g) An order equitably estopping Defendants from denying the Plaintiff's claims in violation of MHPAEA; and

(h) An order providing restitution from Defendants to the Plaintiff for her loss arising out of Defendants' violation of MHPAEA.

**THIRD CAUSE OF ACTION**
**(Attorney's Fees and Costs)**
**(ALL DEFENDANTS)**

126. H.N. realleges each of the paragraphs above as if fully set forth herein.

127. Under the standards applicable to ERISA, H.N. deserves to recover "a reasonable attorney's fee and costs of the action" herein, pursuant to section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g).

128. Defendants have the ability to satisfy the award.

129. H.N.'s conduct of this action is in the interests of all participants who subscribe to the Plan, and the relief granted hereunder will benefit all such Plan participants.

130. H.N.'s conduct of this action is in the interests of all participants suffering from mental illness who subscribe to the Plan, and the relief granted hereunder will benefit all such Plan participants.

131. Defendants have acted in bad faith in denying H.N.'s health insurance benefits under the terms of the respective Plan.

132. The award of attorney's fees against Defendants will deter others acting under similar circumstances.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, H.N., requests this Court to:

(1)    Enter judgment for H.N. against Defendants;

(2)    Declare, adjudge, and decree that Defendants are obligated to pay H.N. for her treatment at Ascend;

(3)    Order that the Defendants make restitution to H.N. in the amount of all losses sustained by H.N. as a result of the wrongful conduct alleged herein, together with prejudgment interest;

(4)    Award twelve percent interest, costs, and attorneys' fees to H.N.; and

(5)    Award such other relief as this Court deems just and proper.

Date:  March 26, 2026

Respectfully submitted,

H.N.
By her attorneys,

/s/ Mala M. Rafik
Mala M. Rafik
BBO No. 638075
ROSENFELD & RAFIK
184 High Street, Suite 503
Boston, MA 02110
T: 617-723-7470
F: 617-227-2843
E:  mmr@rosenfeld.com

21

/s/ Patrick L. Glenn
Patrick L. Glenn
BBO No. 641795
ROSENFELD & RAFIK
184 High Street, Suite 503
Boston, MA 02110
T: 617-723-7470
F: 617-227-2843
E:  plg@rosenfeld.com

22